UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| THE BANK OF NEW YORK MELLON,<br><br>Plaintiff(s),<br><br>v.<br><br>SFR INVESTMENTS POOL 1, LLC, et al.,<br><br>Defendant(s). | Case No. 2:17-CV-256 JCM (NJK)<br><br>ORDER |

Presently before the court is defendant/third-party plaintiff Copperhead Ranch Street and Landscape Maintenance Corporation's (the "HOA") motion for summary judgment. (ECF No. 35). Defendant SFR Investments Pool 1, LLC ("SFR") (ECF No. 37) and plaintiff Bank of New York Mellon ("BNYM") (ECF No. 38) filed responses, to which the HOA replied (ECF No. 41).

Also before the court is BNYM's motion for summary judgment. (ECF No. 44). SFR and the HOA responded (ECF No. 54), to which BNYM replied (ECF No. 60).

Also before the court is SFR's motion for summary judgment. (ECF No. 46). The HOA joined (ECF No. 48) and BNYM responded (ECF No. 53), to which SFR replied (ECF No. 61). The HOA joined SFR's reply. (ECF No. 62).

**I.    Facts**

This case involves a dispute over real property located at 5837 Lenapee Court, Las Vegas, NV 89113 (the "property"). On April 14, 2004, Serhiy and Tetyana But executed a note and first deed of trust for the purchase of the property. (ECF No. 1).

The deed of trust secured a loan in the amount of $232,000.00 and identified GreenPoint Mortgage Funding, Inc. as the lender and beneficiary, Mortgage Electronic Registration Systems

**James C. Mahan**
**U.S. District Judge**

Inc. ("MERS") as the nominee beneficiary, and Marin Conveyancing Corp. as the trustee. (ECF No. 1).

On August 30, 2011, MERS recorded a corporate assignment of deed of trust assigning all beneficial interest in the deed of trust to Bank of America, N.A. (ECF No. 1).

On April 30, 2012, notice of delinquent assessment was recorded against the property on behalf of the HOA. (ECF No. 1). On June 21, 2012, a notice of default and election to sell to under homeowners association lien was recorded against the property on behalf of the HOA, stating that the total amount due as of June 20, 2012 was $1,860.00. (ECF No. 1).

On October 5, 2012, a notice of trustee's sale was recorded against the property on behalf of the HOA, stating an amount due of $3,710.00. (ECF No. 1). On March 12, 2013, pursuant to the notice of trustee's sale, a non-judicial foreclosure sale occurred, whereby SFR acquired interest in the property for $11,100.00. (ECF No. 1).

On April 12, 2014, Bank of America, N.A. recorded a corporate assignment of deed of trust assigning all beneficial interest in the deed of trust to BNYM. (ECF No. 1).

On January 30, 2017, BNYM filed the underlying complaint, alleging four causes of action: (1) quiet title/declaratory relief against the HOA and SFR; (2) declaratory relief under the 5th and 14th amendments of the United States Constitution against the HOA and SFR; (3) quiet title under the 5th and 14th amendments of the United States Constitution against SFR; (4) permanent and preliminary injunction against SFR; and (5) unjust enrichment against SFR. (ECF No. 1).

On May 15, 2017, SFR filed a counterclaim against BNYM for quiet title and injunctive relief. (ECF No. 14).

In the instant motions, the HOA and SFR move for summary judgment against BNYM. (ECF No. 35, 46). BNYM also moves for summary judgment against the HOA and SFR. (ECF No. 44).

**II. Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

    **A. Quiet Title[1]**

In the instant motion, the HOA argues that BNYM failed to sufficiently state a quiet title claim. (ECF No. 35). The HOA further contends that BNYM's quiet title claim fails because its is time barred. (ECF No. 35).

The quiet title claim of BNYM's complaint alleges that the foreclosure sale was wrongful and did not extinguish the deed of trust. (ECF No. 1). BNYM seeks declaratory relief that the HOA foreclosure sale conducted under NRS § 116.3116 did not extinguish the deed of trust because "the HOA failed to provide proper, adequate and sufficient notices required by Nevada law and the CC&Rs." (ECF No. 1).

A wrongful foreclosure claim "challenges the authority behind the foreclosure, not the foreclosure act itself." McKnight Family, LLP v. Adept Mgmt., 310 P.3d 555, 559 (Nev. 2013).

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

James C. Mahan
U.S. District Judge

- 4 -

The HOA's authority to foreclosure on the HOA lien arose from Chapter 116. Therefore, BNYM's claims against the HOA are based on failure to comply with NRS 115, a Nevada statute.

Because BNYM's claim for relief is based on the alleged breach of a statutory duty, it must be brought within three years. See Nev. Rev. Stat. § 11.190(3)(a). The foreclosure sale took place on March 12, 2013. (ECF No. 35). BNYM brought this lawsuit more than three years later, on January 30, 2017. (ECF No. 35). BNYM's quiet title claim based on wrongful foreclosure is thus time barred. Accordingly, the HOA's summary judgment motion will be granted as to BNYM's quiet title claim.

Statute of limitations aside, the court finds BNYM still failed to adequately allege a claim for quiet title.

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal quotation marks and citations omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the NRS gives an HOA a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

The holder of a first deed of trust may pay off the superpriority interest to keep its interest from being extinguished upon foreclosure of an HOA superpriority lien. *See SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also 7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

    (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
    (b) The elapsing of the 90 days; and
    (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2]  "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale

---

[2] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

**James C. Mahan**
**U.S. District Judge**

- 6 -

as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Pursuant to *SFR Investments*, NRS 116.3116, and the recorded foreclosure deed, the validly conducted foreclosure sale extinguished BNYM's deed of trust. Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112. "When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id*.

Based on the allegations set forth in the complaint, the court finds that BNYM has failed to sufficiently state a quiet title claim. BNYM alleges that the recorded notices contained deficiencies and that the CC&Rs and the mortgage protection clause did not provide the HOA with authority to foreclose on the property. These allegations, however, are insufficient in light of the recorded trustee's deed upon sale in favor of the HOA and the actual notice provided to BNYM's predecessor in interest, Bank of America. (ECF No. 41, Ex. 1)

In light of the foregoing, BNYM has failed to sufficiently state a quiet title claim against the HOA. Based on the facts set forth in BNYM's complaint, the foreclosure sale extinguished the deed of trust. Thus, BNYM has failed to allege that its interest in the property is superior to that of the HOA's/SFR's interest. Accordingly, the HOA and SFR's motion for summary judgment as to BNYM's quiet title claim will be granted.

. . .

---

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

**B. Due Process**

BNYM's alleges that the foreclosure sale was wrongful because the HOA failed to give proper notice. (ECF No. 1). BNYM seeks declaratory relief that the HOA foreclosure sale conducted under NRS § 116.3116 did not extinguish the deed of trust, because NRS § 116.3116, prior to its October 1, 2015 amendment, facially violated BNYM's due process rights under the fifth and fourteenth amendments of the United States Constitution. (ECF No. 1).

The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154, 1157-58 (9th Cir. 2016). The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

"A first deed of trust holder only has a constitutional grievance if he in fact did not receive reasonable notice of the sale at which his property rights was extinguished." *Wells Fargo Bank, N.A. v. Sky Vista Homeowners Ass'n*, No. 315CV00390RCJVPC, 2017 WL 1364583, at *4 (D. Nev. Apr. 13, 2017). To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). BNYM has failed on both prongs.

Here, BNYM has failed to show that it did not receive proper notice. BNYM's predecessor in interest, Bank of America, N.A., received a notice of default and election to sell, as well as a notice of sale from the HOA. (ECF No. 41, Ex. 1). Therefore, BNYM's due process argument fails as a matter of law. *See, e.g.*, *Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity.").

Further, BNYM confuses constitutionally mandated notice with the notices required to conduct a valid foreclosure sale. Due process does not require actual notice. *Jones v. Flowers*,

547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158. Accordingly, the HOA's summary judgment motion will be granted as to claim (2) of BNYM's complaint and SFR's summary judgment motion will be granted as to claim (3) of BNYM's complaint.

### C. Tender Offer

BNYM contends that the borrower made a $746.00 payment towards the balance owed on the HOA assessment, which the HOA accepted. (ECF No. 60). Based on testimony of the 30(b)(6) witness for Absolute Collection Services, LLC, BNYM alleges that at most, the superpriority portion of the lien would have been $610.00. *Id.* BNYM argues that this payment satisfied the superpriority portion of the lien. *Id.* Accordingly, the HOA, at best, sold only a subpriority portion of the lien at the foreclosure sale and did not extinguish BNYM's interest in the property. *Id.*

In response, SFR argues that the borrower's payment cannot satisfy the superpriority portion of the lien. The superpriority portion of the lien must be paid by the first security interest holder in order to preserve its senior interest. (ECF No. 46).

The superpriority lien portion consists of "the last nine months of unpaid HOA dues *and maintenance and nuisance-abatement charges*," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Invs.*, 334 P.3d at 411; *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 (emphasis added) ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162.").

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Invs.*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of*

*Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The notice of sale recorded October 5, 2012, set forth an amount due of $3,710.00. (ECF No. 38). Rather than itself tendering the $3,710.00 due, so as to preserve its interest in the property and then later seeking a refund of the difference, BNYM relied on the borrower's lesser payment ($746.00), based on its assumption that the amount stated in the notice included more than what was due to preserve its senior interest. *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund). The fact that a witness has subsequently estimated the amount of the superpriority of the lien does not absolve BNYM of both its failure to tender any amount as well as it assumption that the borrower's payment satisfied the superpriority portion. Had BNYM paid the amount set forth in the notice of default ($3,710.00), or at least the remaining $2,964.00, the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1).

After failing to use the legal remedies available to BNYM to prevent the property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction and filling a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—BNYM now seeks to profit from its own failure to follow the rules set forth in the statutes. *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

Accordingly, the deed of trust does not still encumber the property as BNYM failed to tender the amount due proper to the foreclosure sale.

. . .

### D. Commercial Reasonability

BNYM argues that the foreclosure sale was commercially unreasonable because the property sold for $11,100.00, approximately 6% of its fair market value and 5% of its loan value. (ECF No. 44). BNYM contends that this grossly inadequate price alone justifies setting the foreclosure aside. *Id.* BNYM further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." (ECF No. 77 at 20) (emphasis omitted).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[3]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id.* at 1112; *see also Long v. Towne*, 639 P.2d 528,

---

[3] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite BNYM's assertion to the contrary, the *Shadow Wood* court did not adopt the restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court's adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nevertheless, BNYM fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify setting aside the foreclosure sale. BNYM relies on the mortgage protection clause contained within the CC&Rs as its only evidence of unfairness. (ECF No. 60).

BNYM cites to this court's decision in *ZYZZX2 v. Dizon*, No. 2:13-cv-01307-JCM-PAL, 2016 WL 1181666 (D. Nev. Mar. 25, 2016), to support its argument.[4]

This court has previously distinguished *ZYZZX2 v. Dizon*, from facts highly similar to those presented here. (ECF No. 60); *see also Bayview Loan Servicing, LLC v. SFR Invs. Pool 1, LLC*, No. 2:14-cv-1875-JCM-GWF, 2017 WL 1100955, at *9 (D. Nev. Mar. 22, 2017) (discussing the legal impact of NRS 116.1104 on declarations regarding lien priority made in CC&Rs and noting that the HOA in ZYZZX2 also sent out misleading mailings).

This court's decision in *ZYZZX2* was rendered in light of the combination of a mortgage protection clause and an HOA's misleading mailings. *See ZYZZX2*, 2016 WL 1181666 at *4–5 ("The association sent a letter to Wells Fargo and other interested parties stating that its foreclosure would not affect the senior lender/mortgage holder's lien."). Unlike in *ZYZZX2*, the events surrounding the foreclosure sale here make it clear that BNYM was aware that its interest in the property was at risk. *See id.*; *see also* (ECF Nos. 35, 46).

Moreover, NRS 116.1104 provides that "[e]xcept as expressly provided in this chapter, its provisions may not be varied by agreement, and rights conferred by it may not be waived." Nev. Rev. Stat. § 116.1104; *see also Bayview Loan Servicing, LLC v. SFR Investments Pool 1, LLC*, No. 2:14-CV-1875-JCM-GWF, 2017 WL 1100955, at *9 (D. Nev. Mar. 22, 2017) (discussing the reasoning in *ZYZZX2*); *JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC*, 200 F. Supp. 3d 1141, 1168 (D. Nev. 2016) (holding that an HOA's failure to comply with its CC&Rs does not set aside a foreclosure sale, due to NRS 116.1104).

Accordingly, BNYM's commercial reasonability argument fails as a matter of law, as it failed to set forth evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 n.2 (Nev. App. Apr. 17, 2017) ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

---

[4] BANA makes no argument regarding fraud. *See* (ECF No. 60).

### E. Bona Fide Purchaser Status

Because the court has concluded that BNYM failed to properly raise any equitable challenges to the foreclosure sale, the court need not address BNYM's argument that SFR was not a bona fide purchaser for value. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *3 n.3 (Nev. App. Apr. 17, 2017) (citing *Shadow Wood*, 366 P.3d at 1114).

### F. Conclusion

In light of the foregoing, the court will grant summary judgment in favor of the HOA as to the first two claims of BNYM's complaint: quiet title and due process. (ECF No. 35). In turn, the court will also grant SFR's motion for summary judgment on its claims for quiet title/declaratory relief and permanent injunction (ECF No. 46), as the court finds the foreclosure sale was validly conducted.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the HOA's motion for summary judgment (ECF No. 35) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that SFR's motion for summary judgment (ECF No. 46) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that BNYM's motion for summary judgment (ECF No. 44) be, and the same hereby is, DENIED.

The clerk is instructed to enter judgment accordingly and close the case.

DATED February 21, 2018.

_____
UNITED STATES DISTRICT JUDGE